IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN RE:<br><br>MICHAEL JUSTIN QUICK,<br><br>Debtor. | **Filed / Docketed**<br>**January 26, 2007**<br><br>Case No. 06-10729-M<br>Chapter 13 |
| IN RE:<br><br>JOHN JASON BALLARD and SUMMER MICHELLE BALLARD,<br><br>Debtors. | Case No. 06-11031-M<br>Chapter 13 |

## MEMORANDUM OPINION

This is the story of two motor vehicles and the debtors who no longer desire them. The parties to these disputes have asked the Court to determine whether debtors or creditors must suffer at the gallows of the "hanging paragraph" found in § 1325 of the United States Bankruptcy Code, as modified by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). The following findings of fact and conclusions of law are made pursuant to Federal Rule of Civil Procedure 52 and Federal Rule of Bankruptcy Procedure 7052, made applicable to these contested matters by Federal Rule of Bankruptcy Procedure 9014.

### Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and venue is proper pursuant to 28 U.S.C. § 1409.[1] Reference to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a). This is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(L).

---

[1] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

**Findings of Fact**

The facts in these cases are simple and undisputed.[2] On November 2, 2005, Michael Justin Quick ("Quick") entered into a retail installment contract (the "Quick Contract") for the purchase of a used 2002 Jeep Grand Cherokee (the "Cherokee") with Chris Nikel Chrysler Jeep Dodge. The Quick Contract was assigned without recourse to DaimlerChrysler Financial Services Americas LLC, successor by merger to DaimlerChrysler Services North America LLC ("Chrysler"). Under the terms of the Quick Contract, the purchase price of the Cherokee was $20,988. Of that, $20,693 was financed over a period of six years with interest at an annual rate of 11.44%. Quick was to make monthly payments to Chrysler of $400.43, commencing on December 17, 2005. As part of the transaction, Quick granted Chrysler a security interest in the Cherokee.

On June 9, 2004, John Jason Ballard and Summer Michelle Ballard (the "Ballards") entered into a retail installment contract (the "Ballard Contract") for the purchase of a used 2004 Dodge Neon (the "Neon") with Crown Bristow LLC. The Ballard Contract was also assigned without recourse to Chrysler. The Ballard Contract provided that the purchase price of the Neon was $10,340. The Ballards also purchased a service contract, bringing the total amount financed to $11,895. This was financed over a period of five years with interest at an annual rate of 17.5%. The Ballards were to make monthly payments to Chrysler of $300.97, commencing on July 24, 2004. As part of the transaction, the Ballards granted Chrysler a security interest in the Neon.

Quick and the Ballards eventually sought relief under Chapter 13 of the Bankruptcy Code.

---

[2] The issues raised in each of these cases are identical, and the debtors and the creditor in both cases are represented by the same counsel. As a result, the Court has determined that the most efficient manner in which to dispose of these cases is through the issuance of a single memorandum opinion.

2

Quick filed his petition on June 14, 2006; the Ballards made their filing on August 9, 2006. Chrysler filed proofs of claim in both cases, alleging a claim of $19,712.84 in the Quick case and $10,614.51 in the Ballard case. Neither Quick nor the Ballards found it in their best interest to retain the Cherokee or the Neon (collectively referred to as the "Vehicles"). They filed plans calling for the surrender to Chrysler of the Vehicles in full satisfaction of Chrysler's claims. In the Quick case, based upon the most recently filed plan, unsecured creditors are projected to receive 100% of their claims.[3] In the Ballard case, the number is 9%.[4] Chrysler has objected to confirmation of the plans in each of the cases, arguing that it should be allowed to liquidate the Vehicles and then file unsecured claims for any remaining deficiency.

To the extent the "Conclusions of Law" contain any items which should more appropriately be considered "Findings of Fact," such items are incorporated herein by this reference.

## Conclusions of Law

The dispute before the Court today focuses on § 1325(a) of the Bankruptcy Code, as modified by BAPCPA. That section provides as follows:

**(a)** Except as provided in subsection (b), the court shall confirm a plan if–

\* \* \*

    **(5)** with respect to each allowed secured claim provided for by the plan–

        **(A)** the holder of such claim has accepted the plan;

        **(B)(i)** the plan provides that–

            **(I)** the holder of such claim retain the lien securing such claim until the earlier of–

---

[3] *See Case No. 06-10729-M, Docket No. 41.*

[4] *See Case No. 06-11031-M, Docket No. 31.*

>>> **(aa)** the payment of the underlying debt determined under nonbankruptcy law; or
>>>
>>> **(bb)** discharge under section 1328; and
>>
>> **(II)** if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
>
> **(ii)** the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
>
> **(iii)** if–
>
>> **(I)** property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
>>
>> **(II)** the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or

**(C)** the debtor surrenders the property securing such claim to such holder;

\* \* \*

*For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing; . . .* [5]

---

[5] § 1325(a) (emphasis added).

Given that Congress did not see fit to provide it with a numeric designation, the emphasized portion of § 1325(a) has come to be known as the "hanging paragraph," and will be so identified herein.

Prior to the adoption of the hanging paragraph, determination of the amount of a secured claim in a Chapter 13 case was governed by § 506.  As one court has explained:

> Prior to BAPCPA, it was clear that "[s]ection 506 . . . govern[ed] the definition and treatment of secured claims, *i.e.,* claims by creditors against the estate that are secured by a lien on property in which the estate has an interest. Subsection (a) of § 506 provide[d] that a claim [wa]s secured only to the extent of the value of the property on which the lien is fixed; the remainder of that claim [wa]s considered unsecured." *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 238-39, 109 S.Ct. 1026, 1029 (1989). "Thus, a $100,000 claim, secured by a lien on property having a value of $60,000, [wa]s considered to be a secured claim to the extent of $60,000, and to be an unsecured claim for $40,000." *Id.* at 240 n.3 (citing 3 *Collier on Bankruptcy* ¶ 506.04 (15th ed. 1988)) ("Section 506(a) requires a bifurcation of a 'partially secured' or 'undersecured' claim into separate and independent secured claim and unsecured claim components."). To the extent the secured component was otherwise allowed under 11 U.S.C. § 502(a), the secured part of the claim became an "allowed secured claim," while the unsecured component constituted an "allowed unsecured claim." *Id.*[6]

The treatment of a secured creditor under § 1325(a)(5) after BAPCPA was aptly explained by Judge Federman:

> Debtors have three plan options for treatment of secured creditors entitled to the benefit of the hanging paragraph: they may obtain the creditor's approval of the plan; they may surrender the collateral; or they may provide that the creditor retain its lien and a promise of future property distributions (such as deferred cash payments) whose total value, as of the effective date of the plan, is not less than the allowed amount of the creditor's secured claim (commonly referred to as the "cramdown option").  If the cramdown option is chosen, and the secured creditor is not a 910-creditor, then the debtor may bifurcate the creditor's claim into secured and unsecured portions, based on the value of the collateral, pay the secured portion over the life of the plan (with interest), and treat the unsecured portion of the claim in the same manner as other unsecured creditors.  As to 910-creditors, however, the debtor

---

[6] *In re Gentry*, No. 06-50204, 2006 WL 3392947, at *2 (Bankr. E.D. Tenn. Nov. 22, 2006) (footnotes omitted).

>  may not bifurcate the claim; rather, the allowed secured claim is the full amount that is owed to that creditor as of the date of the bankruptcy.[7]

In these cases, Quick and the Ballards have chosen to surrender the Vehicles. Chrysler does not take issue with the surrender. The question is whether Chrysler is entitled to file an unsecured claim for any deficiency which may exist after sale of the collateral.[8]

The Court is not writing on a blank slate. Two separate and distinct views have been developed since BAPCPA became law. The majority of courts have found that under the terms of the hanging paragraph, the surrender of a vehicle to a 910-creditor results in full satisfaction of the claim, and precludes the filing of an unsecured claim for a deficiency after liquidation of the vehicle.[9] As explained in the *Ezell* decision:

>  The Anti-Cramdown [hanging] Paragraph serves to eliminate Revised § 506 from the allowed secured/unsecured claim bifurcation treatment otherwise mandated by Revised § 506 with regard to those claims secured by "a motor vehicle" and "any

---

[7] *In re Osborn*, 348 B.R. 500, 503–504 (Bankr.W.D. Mo. 2006) (footnotes omitted). Creditors whose claims are described in the hanging paragraph are commonly referred to as "910-creditors," and will be so identified in this Memorandum Opinion.

[8] The Court has some concern about the ripeness of this issue, given that there is nothing in the record to indicate that Chrysler has taken the steps necessary to determine whether it will have a deficiency claim in either case, i.e., Chrysler has not sold the Vehicles and applied the sale proceeds to its claims. However, given that: (1) the plans proposed by the debtors in each case provide that surrender of the Vehicles will fully satisfy Chrysler's claim; (2) the issue of plan confirmation is squarely before the Court; (3) no other court that has dealt with the issue in similar circumstances has had any independent concerns with ripeness; and (4) the issue is likely to recur in future cases, the Court will render a decision.

[9] *See In re Gentry*, No. 06-50204, 2006 WL 3392947 (Bankr. E.D. Tenn. Nov. 22, 2006); *In re Turkowitch*, ___ B.R. ___, 2006 WL 3346156 (Bankr. E.D. Wis. Nov. 16, 2006); *In re Feddersen*, ___ B.R. ___, 2006 WL 3347919 (Bankr. S.D. Ill. Nov. 15, 2006); *In re Pool*, 351 B.R. 747 (Bankr. D. Or. 2006); *In re Maggett*, No. BK06–80573, 2006 WL 3478991 (Bankr. D. Neb. Oct. 19, 2006); *In re Nicely,* 349 B.R. 600 (Bankr. W.D. Mo. 2006); *In re Evans,* 349 B.R. 498 (Bankr. E.D. Mich. 2006); *In re Osborn,* 348 B.R. 500 (Bankr. W.D. Mo. 2006); *In re Payne,* 347 B.R. 278 (Bankr. S.D. Ohio 2006); *In re Brown,* 346 B.R. 868 (Bankr. N.D. Fla. 2006); *In re Sparks,* 346 B.R. 767 (Bankr. S.D. Ohio 2006); *In re Ezell*, 338 B.R. 330 (Bankr. E.D. Tenn. 2006).

> other thing of value" falling within its provisions. In other words, when the creditor files its claim as secured, the Anti-Cramdown Paragraph precludes the use of Revised § 506(a) to reduce or bifurcate that claim into secured and unsecured components. Unless the amount of the claim is subject to reduction for reasons other than collateral value, the creditor's allowed secured claim is fixed at the amount at which the claim is filed.
>
> Accordingly, under Revised § 1325(a)(5), a creditor holding a secured claim falling within the scope of the Anti-Cramdown Paragraph is fully secured for the amount of its claim, which is, in actuality, the debt owed. If the property is to be retained pursuant to Revised § 1325(a)(5)(B), the debtor must treat the entire claim as secured, and unless the creditor agrees to other treatment, must propose a plan that will pay the full amount of the claim as secured over the life of the plan. It only stands to reason that the same analysis is true when applied to surrender under Revised § 1325(a)(5)(C)–the creditor is fully secured, and surrender therefore satisfies the creditor's allowed secured claim in full.[10]

A lesser number of courts have taken the contrary view, and held that the hanging paragraph does not preclude the filing of a deficiency claim in this situation.[11] This Court has reviewed every decision which it could locate dealing with this issue and finds the majority position persuasive. The courts which have preceded this Court in ruling on this issue have provided much detailed and insightful analysis. There is no reason for this Court to reinvent the wheel.

Chrysler takes the position that, based upon its review of the legislative history of BAPCPA, the hanging paragraph is ambiguous.[12] This Court disagrees. The hanging paragraph states that the claim bifurcation provisions of § 506 do not apply to creditors holding the type of claim that Chrysler holds in these cases. This Court agrees with and hereby adopts the thoughtful analysis of

---

[10] *In re Ezell*, 338 B.R. at 340.

[11] *See In re Zehrung,* 351 B.R. 675 (W.D. Wis. 2006); *In re Morales*, ___ B.R. ___, 2007 WL 92414 (Bankr. N.D. Ill. Jan. 11, 2007); *In re Hoffman*, ___ B.R. ___, 2006 WL 3813775 (Bankr. E.D. Mich. Dec. 28, 2006); *In re Particka,* ___ B.R. ___, 2006 WL 3350198 (Bankr. E.D. Mich. Nov. 17, 2006); *In re Duke,* 345 B.R. 806 (Bankr. W.D. Ky. 2006).

[12] For a detailed analysis of the legislative history on this point, see *In re Ezell*, 338 B.R. at 340–41.

Judge Killian:

> First, the language of the Hanging Paragraph is not at all ambiguous to the Court. It simply states the circumstances in which § 506 does not apply to § 1325(a)(5). Although its physical placement in the Code may be confusing and its application may be disputed, the language itself is quite clear. As the Eleventh Circuit has recently stated, "courts are not commissioned to cure problems in the operation of statutory schemes Congress has designed." *In re Bracewell,* 454 F.3d 1234, 1245–46 (11th Cir. 2006). A court's function is therefore "to apply statutes, to carry out the expression of the legislative will that is embodied in them, not to 'improve' statutes by altering them." *Id., citing Wright v. Secy. for Dep't of Corr.,* 278 F.3d 1245, 1255 (11th Cir. 2002). Only Congress may alter a statute to eliminate problems with the way it operates; courts may not declare them ambiguous when they are not and then improve them to their liking. *Bracewell* at 1245–46.[13]

Chrysler may not ask the Court to rewrite the statute under the guise of ambiguity merely because Chrysler does not like the result of its application.

Chrysler also argues that a ruling which denies Chrysler the right to file a deficiency claim runs contrary to the spirit and purpose of BAPCPA, which Chrysler contends was enacted (at least with respect to the hanging paragraph) solely for the benefit of secured creditors. At least one case seems to support Chrysler's position.[14] The Court disagrees for two reasons. First, the Court is not convinced that today's ruling is adverse to the position of a secured creditor. In a post-BAPCPA Chapter 13 case, a debtor dealing with a claim subject to the hanging paragraph has two options— either she must pay the full contract price for the collateral, or she must immediately surrender it to the creditor. As noted in the *Turkowitch* decision,

> this Court can envision that the denial of this deficiency claim is exactly what was envisioned by the drafters [of BAPCPA], in order to encourage debtors to either pay the full amount of the creditor's claim to retain the vehicle or to immediately surrender the vehicle to the creditor before any further depreciation could occur.

---

[13] *In re Brown*, 346 B.R. at 874.

[14] *See In re Duke*, 345 B.R. at 809.

8

> Accordingly, this Court agrees with the majority in holding that the language of the hanging paragraph is neither ambiguous nor absurd in its application, and the statute should be applied as written.[15]

Moreover, this Court is not convinced that BAPCPA is designed solely for the benefit of creditors such as Chrysler. Consider the following:

> As far as this Court can ascertain, Congress never expressed any intent contrary to the result reached by the *Ezell* court and this Court, and it is illogical to conclude that the same language, *i.e.,* the Hanging Paragraph means something different in different contexts. Secured creditors, like every other party to a bankruptcy case, have to take both the good and the bad. In bankruptcy, everyone gets a piece of the pie, but almost no one gets all they want or are owed. Accordingly, it is entirely logical that Congress apportioned the pie to favor some creditors in some situations but others in different situations. Both secured and unsecured creditors' lobbies were represented during the drafting and enactment of BAPCPA. Like in bankruptcy, each probably received some of what they wanted, but neither received all they would have liked. Contrary to [creditor]'s argument, the Court's interpretation and application of the Hanging Paragraph does not result in a "windfall" to debtors, as any benefit would inure largely to the unsecured creditors and not the debtor. Additionally, other policies espoused by Congress throughout the consideration and enactment of BAPCPA are also furthered by this interpretation. Through the amendments under BAPCPA, it is clear that Congress favors quick confirmations and payments of Chapter 13 Plans. A surrender in full satisfaction clearly impacts confirmation. If a debtor may not surrender in full satisfaction of the debt, the unsecured deficiency balance is not immediately known. In a close case, the amount of the deficiency could impact upon the feasibility of the plan and whether or not confirmation is even possible. Even in better-funded cases, the uncertainty would impact distribution to other unsecured creditors.[16]

The view espoused by Chrysler, that the hanging paragraph should be interpreted in a way that only benefits secured creditors, is expressly rejected by this Court.[17]

---

[15] *In re Turkowitch*, ___ B.R. ___, 2006 WL 3346156, *6 (Bankr. E.D. Wis. 2006).

[16] *In re Brown*, 346 B.R. at 875–76.

[17] Accordingly, the Court respectfully disagrees with the conclusion reached by the court and relied upon by Chrysler in *In re Duke*, 345 B.R. at 809, where the court stated that "[t]he only clear intent discerned from the legislative history on the hanging paragraph is that Congress intended to provide more protection to creditors with purchase money security interests." *See also In re Zehrung*, 351 B.R. 675, 678 (W.D. Wis. 2006) (citing *Duke* with approval).

Those decisions which support the position advanced by Chrysler have all been discussed and their analysis rejected by the courts that this Court finds persuasive. There is no reason for this Court to repeat their analysis. However, in addition to the reasons given by those courts that have rejected the analysis contained in the *Zehrung, Morales,* and *Particka* cases, this Court finds those decisions less than persuasive for yet another reason. Each of those decisions holds that the hanging paragraph and § 506 have nothing to do with the allowance of a deficiency claim for the 910-creditor, because "[a] creditor taking possession of collateral does not depend upon § 506 to determine the value of its unsecured claim. Section 506 has application only when the estate retains an interest in the collateral, *a circumstance which disappears with surrender*."[18] There is nothing in the Bankruptcy Code which indicates that a debtor's (or her estate's) interest in property terminates immediately upon surrender of the property to the creditor. Moreover, under the law of the state of Oklahoma, a debtor has an interest in collateral repossessed by a secured creditor until that collateral has been disposed of by the secured creditor.[19] To suggest that § 506 (and hence the hanging paragraph) does not apply under § 1325(a)(5)(C) because the debtor has no interest in the property after its surrender does not pass logical muster.

The court in *Hoffman* offered another argument in support of allowance of a deficiency claim to a 910-creditor:

> Moreover, because the hanging paragraph's provision, that § 506 shall not apply to

---

[18] *In re Zehrung*, 351 B.R. at 678 (emphasis added); *see also In re Particka*, ___ B.R. ___, 2006 WL 3350198, *10 (Bankr. E.D. Mich. Nov. 17, 2006) (agreeing with *Zehrung*); *In re Morales*, ___ B.R. ___, 2007 WL 92414, *4 (Bankr. N.D. Ill. 2007) (relying upon *Particka*).

[19] *See, e.g.,* OKLA STAT. ANN. tit. 12A, § 1-9-623(c) (West 2001) (providing that a debtor has a right to redeem collateral taken by a secured party until the collateral is sold to a third party or accepted by the creditor in full or partial satisfaction of the debt).

a 910 claim, is only "for purposes of" § 1325(a)(5), that provision does not apply for any *other* purpose, and does not apply for purposes of any other section of the Bankruptcy Code. Thus, the hanging paragraph has no impact on other provisions of the Bankruptcy Code which protect the 910 creditor's right to an unsecured deficiency claim. And § 506 and its bifurcation concept does apply, to the extent it is otherwise relevant, for these other purposes. These other Code provisions include the claim allowance/disallowance provisions of Code § 502(a) and 502(b), § 506 itself, and all of the provisions in Chapter 13 that are normally available for the benefit and protection of unsecured creditors.[20]

This argument was effectively dealt with in the *Gentry* decision:

> Having determined that Ezell was correctly decided, this court turns to [creditor]'s alternative argument in this case, that the Hanging Paragraph only prohibits § 506(a)'s bifurcation when applying § 1325(a)(5) and that its secured claim is still bifurcated when determining whether other requirements of confirmation, including § 1325(a)(4), have been met. This assertion does have some facial appeal at first blush. Clearly, the Hanging Paragraph begins with the clause "[f]or purposes of paragraph (5)," which suggests that for *other* purposes or for *other* paragraphs, the language that follows the introductory clause has no applicability; in other words, the phrase means "[f]or purposes of paragraph 5 *only*."
>
> However, the introductory clause can not be construed in isolation but must be examined in context with the remaining language of the amendment. *See United States v. Brown,* 536 F.2d 117, 121 (6th Cir.1976) (quoting *Richards v. United States,* 369 U.S. 1, 11, 82 S.Ct. 585, 591 (1962) ("[I]t is 'fundamental that a section of a statute should not be read in isolation from the context of the whole (statute).'"). After the introductory clause are the words "section 506 shall not apply to a claim described in [paragraph 5] . . . ." The claim described in paragraph 5 is "each allowed secured claim provided for by the plan." Inserting the word "only" into the phrase as suggested by [creditor] results in the following: "For purposes of paragraph (5) [only], section 506 shall not apply to [each allowed secured claim provided for by the plan] . . . ."
>
> The problem with this reading is that paragraph (5) is the only paragraph in § 1325(a) that even references "allowed secured claim provided for by the plan" or even allowed secured claim. There is no other provision which could logically be read to mean "for this purpose" or "in this paragraph" section 506 *shall* apply to allowed secured claims since no other section governs the treatment of secured

---

[20] *In re Hoffman*, ___ B.R. ___, 2006 WL 3813775, *3 (Bankr. E.D. Mich. Dec. 28, 2006) (footnotes omitted).

11

> claims in a chapter 13 plan.
>
> Furthermore, such a construction would be inconsistent with the statute's legislative history which states simply that a new paragraph has been added to § 1325(a) providing that § 506 does not apply to a 910 Claim. *See* note 8 *infra* ("Section 306(b) adds a new paragraph to section 1325(a) of the Bankruptcy Code specifying that Bankruptcy Code section 506 does not apply to a debt incurred within the two and one-half year period preceding the filing of the bankruptcy case if the debt is secured by a purchase money security interest in a motor vehicle acquired for the personal use of the debtor within 910 days preceding the filing of the petition."). There is no suggestion in the legislative history that this directive only applies to § 1325(a)(5) or that Congress intended for a 910 Claim to be bifurcated for purposes of applying all other Code sections.
>
> More importantly, [creditor]'s interpretation is inconsistent with § 506. Under [creditor]'s argument, it still has an unsecured claim as defined by § 506 when every provision but § 1325(a)(5) is considered. According to [creditor], when the surrender option is utilized, its secured value is the liquidation value that it will receive at a UCC foreclosure sale and its unsecured value is the deficiency owing after the sale. However, as amended by BAPCPA, § 506(a) now specifies that the secured value of personalty in the chapter 7 or 13 of an individual is replacement value as of the date of the filing of the petition, with replacement value being defined as the price a retail merchant would charge for property of that kind if the property was acquired for personal, family, or household purposes, as in the present case. 11 U.S.C. § 506(a)(2). In other words, § 506 no longer provides [creditor] the deficiency claim that it would otherwise receive under state law.[21]

The Court finds the analysis in *Gentry* persuasive, and expressly adopts it in rejecting the conclusion of the court in *Hoffman*.

At the oral argument held in these cases on December 19, 2006, Chrysler argued that any denial of its "right" to file an unsecured claim for any deficiency that may exist after disposal of the Vehicles constitutes a taking of Chrysler's property rights in violation of the Fifth Amendment to the United States Constitution. Chrysler offers no authority for its position, other than a general

---

[21] *In re Gentry*, No. 06-50204, 2006 WL 3392947, *8 (Bankr. E.D. Tenn. Nov. 22, 2006) (footnote omitted).

citation from a non-bankruptcy case.[22] A similar argument was recently rejected by the United States Bankruptcy Court for the Northern District of Florida:

> Further, [creditor]'s contention that state law controls and it is entitled to assert an unsecured deficiency claim is also without merit. The Bankruptcy Code is federal law that preempts state law where such laws conflict. *Pacific Gas and Elec. Co. v. State Energy Resources Conservation and Dev. Comm'n,* 461 U.S. 190, 204, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983). Creditors' rights are curtailed in many ways once a debtor files bankruptcy due to the Bankruptcy Code's provisions regarding the automatic stay, discharge, and distribution of non-exempt assets, for example. *See, e.g.,* 11 U.S.C. §§ 362, 524, and 726. Therefore, the argument that this interpretation of the Hanging Paragraph cuts off the creditors' state law rights is not well-taken, as there is nothing inappropriate about bankruptcy laws affecting a creditor's right to recover under state law.[23]

The Fifth Amendment deals with property rights. The right to a deficiency judgment is not a property right; it is a contractual right. As the United States Court of Appeals for the Sixth Circuit recently noted, "[b]ankruptcy laws have long been construed to authorize the impairment of contractual obligations."[24] Chrysler's constitutional argument is without merit.

## Conclusion

The objections to confirmation submitted by Chrysler are overruled. The debtors in these cases may surrender the Vehicles to Chrysler in full satisfaction of its claims. The plans proposed by Quick and the Ballards are confirmed. A separate judgment consistent with this Memorandum Opinion is entered concurrently herewith.

---

[22] *Landgraf v. USI Film Products*, 511 U.S. 244, 266 (1994) (noting that the Fifth Amendment prevents the government "from depriving private persons of vested property rights except for a 'public use' and upon payment of a 'just compensation.'").

[23] *In re Brown*, 346 B.R. 868, 876 (Bankr. N.D. Fla. 2006).

[24] *In re Nichols*, 440 F.3d 850, 853 (6th Cir. 2006) (citations omitted).

Dated this 26th day of January, 2007.

BY THE COURT:

_____
TERRENCE L. MICHAEL
UNITED STATES BANKRUPTCY JUDGE

4768.6